UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.                                                  Case No. 3:20-CR-81-CCB-SJF

DONALD WANJIKU

**OPINION AND ORDER**

Defendant Donald Wanjiku was convicted of transportation of child

pornography in violation of 18 U.S.C. §§ 2252A(a)(1) and (b)(1) in the Northern District

of Illinois, Case No. 16 CR 296-1. On April 13, 2018, Mr. Wanjiku was sentenced to a

term of imprisonment of 60 months, a 14-year term of supervised release, and a special

assessment fee of $5,000 pursuant to 18 U.S.C. § 3014. (ECF 4-4). As a condition of Mr.

Wanjiku's supervised release, he is ordered to "pay any financial penalty that is

imposed by this judgment that remains unpaid at the commencement of the term of

supervised release" and that "[his] monthly payment schedule shall be an amount that

is at least 10 percent of [his] net monthly income, defined as income net of reasonable

expenses for basic necessities such as food, shelter, utilities, insurance, and employment

related expenses." (*Id*. at 5). Another condition of Mr. Wanjiku's supervised release is

that he "shall notify the court of any material change in [his] economic circumstances

that might affect [his] ability to pay restitution, fines, or special assessments." (*Id*.). Mr.

Wanjiku did not appeal the sentencing court's imposition of the special assessment or

the payment schedule. On September 9, 2020, Mr. Wanjiku's case was transferred to the

Northern District of Indiana. (ECF 2).

Pending before the Court are several motions from Mr. Wanjiku. On January 8,

2025, Mr. Wanjiku filed a motion to modify judgment (ECF 5) and emergency motion to

stay garnishment of his social security disability benefits (ECF 6). In Mr. Wanjiku's

motions, he asserts that there has been a material change in his economic circumstances,

and that he is unable to pay the $5,000 special assessment. He explains that, since he

was originally sentenced, he has lost the support financial support of his father who

passed away in June 2019, and that he is disabled and only receives $1,042.00 a month

in social security disability benefits. (ECF 5 at 1). He also asserts that on January 3, 2025,

the U.S. Attorney of the Northern District of Indiana initiated a garnishment against his

SSD benefits to satisfy the special assessment, and requests a stay on the garnishment.

(ECF 6).

After Mr. Wanjiku filed his motions, the Court ordered the United States to

respond by January 30, 2025. (ECF 8). The United States did not respond by that date,

and Mr. Wanjiku moved for the Court to interpret the Government's lack of response as

evidence in support of Mr. Wanjiku's emergency motion to stay garnishment, and to

rule on his motion. On January 31, 2025, the United States moved for leave to file a

delayed response to Mr. Wanjiku's pending motions, explaining that the Clerk's Office

did not notify the Government of Mr. Wanjiku's pending motions or of the Court's

order. (ECF 11). On February 3, 2025, the Court granted the United States' motion,

denied Mr. Wanjiku's motion to interpret the Government's lack of response as

evidence, and ordered the United States to respond by February 14, 2025, and for Mr.

Wanjiku to reply by February 24, 2025. (ECF 15). Prior to the Government filing their

response, Mr. Wanjiku filed several additional and duplicative motions, including a

motion for emergency hearing requesting a stay of any further garnishment and a

return of $156.30 that was already garnished (ECF 16), another emergency motion for (I)

stay of future garnishments, (II) return of garnished funds, and (III) any other relief the

Court deems just and proper (ECF 18), and a motion to reconsider the Court's February

3, 2025 order that denied Mr. Wanjiku's motion for the Court to interpret the

Government's lack of response as evidence in support of Mr. Wanjiku's emergency

motion to stay garnishment (ECF 20). On February 10, 2025, the Government filed a

consolidated response to Mr. Wanjiku's various motions (ECF 23), and Mr. Wanjiku

timely filed his reply. (ECF 25). On February 21, 2025, Mr. Wanjiku then filed a motion

to expedite ruling on his emergency motions. (ECF 31).  The Opinion and Order will

address all motions as they raise similar arguments. For the reasons stated herein, Mr.

Wanjiku's motions are denied.

## ANALYSIS

a. **Motion to reconsider the Court's February 3, 2025 order that denied Mr. Wanjiku's motion for the Court to interpret the Government's lack of response as evidence (ECF 20)**

To begin, Mr. Wanjiku asks the Court to reconsider its February 3, 2025 order in

which the Court denied Mr. Wanjiku's motion for the Court to interpret the

Government's lack of response as evidence in support of his emergency motion to stay

garnishment, and granting the Government's motion for an extension of time to

respond. (ECF 20). The Government requested leave to file a delayed response to Mr.

Wanjiku's motions because they did not receive notice of the motions until January 31,

2025. (ECF 11). The Court did not err in granting the Government's request for leave to

file a delayed response by February 14, 2025 because the Government had not been

served Mr. Wanjiku's motions. The Court therefore denies Mr. Wanjiku's motion for

reconsideration of its February 3, 2025 order. (ECF 20).

### b. Request to terminate $5,000 special assessment.

Mr. Wanjiku requests that the Court modify his judgment "by removing [the]

special assessment due to being indigent." (ECF 5).   But "[d]istrict courts have limited

power to revisit sentences after they are imposed." *United States v. Goode,* 342 F.3d 741,

743 (7th Cir. 2003) (discussing how the district court did not have subject matter

jurisdiction to terminate imposition of fine, only adjust payment schedule if there was

material change in economic circumstances).  The Court is unaware of any legal

authority that authorizes the Court to terminate the special assessment fee under 18

U.S.C. § 3014 that was imposed against him by the sentencing court at this stage.

Further, under § 3014(g), the obligation to pay the special assessment "shall not cease

until the assessment is paid in full." 18 U.S.C. §  3014(g). The Court denies Mr.

Wanjiku's motions to the extent he is seeking a termination of the $5,000 special

assessment fee.

### c. Request to modify payment schedule.

Mr. Wanjiku also requests that the Court modify the payment schedule provided

in his judgment. His monthly payment schedule "shall be an amount that is at least 10%

of [his] net monthly income, defined as income net of reasonable expenses for basic

necessities such as food, shelter, utilities, insurance, and employment-related expenses."

(ECF 4-4 at 5). Mr. Wanjiku asserts that there has been a material change in his

economic circumstances because he now lacks financial support from his father who

passed away while Mr. Wanjiku was incarcerated, and that his mother did not leave

him an inheritance in her will. Mr. Wanjiku also asserts in his reply in support of his

emergency motion that at the time he was sentenced, he "was not deemed indigent for

purposes of § 3014 because he still had financial support from his father." (ECF 25 at 2).

Mr. Wanjiku also asserts that there was "no real inquiry into his future earning

capacity" when the sentencing court determined that Mr. Wanjiku was not indigent for

purposes of imposing the special assessment fee. (*Id*. at 7).

As the Court stated, Mr. Wanjiku was sentenced in the Northern District of

Illinois, Case No. 16 CR 296-1. A transcript of Mr. Wanjiku's sentencing hearing is

available in the Northern District of Illinois docket. At Mr. Wanjiku's sentencing

hearing, his counsel conceded that Mr. Wanjiku was earning rental income from two

properties, although his counsel informed the court that he was uncertain where that

money was going. *See United States v. Wanjiku*, No. 16 CR 296-1, (N.D. Ill. 2016), ECF 102

at 9, 45. His counsel also represented that the properties are titled in Mr. Wanjiku's

name. *Id*. at 8.  The sentencing court found that on its "reading [of] the details of the

properties. I guess on the basis of that, I can't actually say that he is indigent. So, in that

case, [the $5,000 special assessment is] going to be imposed." *Id*. at 46. There was also no

mention of Mr. Wanjiku receiving financial support from his father; therefore, it

appears that the alleged familial support did not factor into the sentencing court's

determination that Mr. Wanjiku was not indigent for purposes of imposing the special

assessment under § 3014. The sentencing court also allowed Mr. Wanjiku to file an

objection within ten days of his sentencing if he believed the special assessment should

not be imposed because of his indigency status. *Id.* at 54.  Mr. Wanjiku did not file

anything within 10 days, and he did not appeal the imposition of the special assessment

or the payment schedule.

Mr. Wanjiku does not address in his several motions whether he is still receiving

that rental income, or whether he still owns those two properties. Because the

sentencing court determined that Mr. Wanjiku was not indigent because he received

income from two rental properties, the Court therefore does not find that Mr. Wanjiku

has shown a material change in his economic circumstances. Moreover, the payment

schedule in the judgment requires at least 10% of Mr. Wanjiku's **net income**, not of his

gross income. Mr. Wanjiku's "reasonable expenses for basic necessities such as food,

shelter, utilities, insurance, and employment-related expenses" are explicitly deducted

from the 10% net income determination in the judgment's payment schedule. In

support of his request to modify the payment schedule, Mr. Wanjiku details his various

food, insurance, and utility expenses. But so long as those expenses are reasonable, they

are already considered when determining the 10% of his net income that he is obligated

to pay under the Court's judgment.  Accordingly, the Court denies Mr. Wanjiku's

motions to modify the payment schedule.

d. **Request to stay garnishment of his Social Security Disability benefits, and return of garnished funds.**

Mr. Wanjiku also argues that the Government is unauthorized to garnish his

social security disability benefits under 42 U.S.C. § 407, a statute under the Social

Security Act ("SSA"), which states that "none of the moneys paid or payable or rights

existing under this subchapter shall be subject to execution, levy, attachment,

garnishment, or other legal process, or to the operation of any bankruptcy or insolvency

law." 42 U.S.C. § 407.  Mr. Wanjiku thus moves to stay the garnishment of his social

security disability benefits, and a return of the benefits that have been offset.

Mr. Wanjiku's $5,000 special assessment was imposed pursuant to 18 U.S.C. §

3014. Section 3014 also states that such amounts assessed shall "be collected in the

manner that fines are collected in criminal cases, including the mandatory imposition of

civil remedies for satisfaction of an unpaid fine as authorized under Section 3613, where

appropriate." 18 U.S.C. § 3014(f). Section 3613, as referenced in § 3014(f), states that the

"United States may enforce a judgment imposing a fine in accordance with the practices

and procedures for the enforcement of a civil judgment under Federal law or State law.

**Notwithstanding any other Federal law (including section 207 of the Social Security**

**Act**), a judgment imposing a fine may be enforced against all property or rights to

property of the person fined," with certain exceptions not at issue here. 18 U.S.C.

3613(a) (emphasis added).  Section 207 of the Social Security Act is codified as 42 U.S.C.

§ 407. So while the SSA's anti-alienation provision under § 407  would otherwise protect

Mr. Wanjiku's social security benefits from collection, § 3613 explicitly overrides the SSA's anti-alienation provision. *See also United States v. Swenson*, 971 F.3d 977, 983 (9th Cir. 2020) ("We do not doubt that if Mr. Swenson's Social Security benefits were at issue, Section 3613(a) would override the SSA's anti-alienation provision as to his benefits, and the government would be able to garnish them."). Thus, the Government is empowered to garnish Mr. Wanjiku's social security disability benefits under 18 U.S.C. §§ 3014(f) and 3613.

As to the Government's collection efforts, the United States Treasury's Offset Program ("TOP") is a federal program authorized by the Debt Collection Act of 1982, 31 U.S.C. §§ 3701 *et. seq.*, which permits the Treasury Department to collect delinquent debts owed to federal agencies. *See* 31 U.SC. § 3716. Under the TOP, "Congress has subjected to offset all funds payable by the United States to an individual who owes certain delinquent federal debts," unless "payment is exempted by statute[.]" *Astrue v. Ratliff*, 560 U.S 586, 589 (2010). Under the TOP, the Government is authorized to offset social security disability payments. *See Omegbu v. U.S. Dep't of Treasury*, 118 F. App'x 989, 991 (7th Cir. 2004); *United States v. Schotz*, No. 23-2675, 2024 WL 1478876, at *1 (7th Cir Apr. 5, 2024). Section 3716 permits an administrative offset only after giving the debtor written notice. *See* 31 U.S.C. § 3716(a). While administrative offset is unavailable when a statute explicitly prohibits using administrative offset or setoff to collect the claim or type of claim involved, *see* 31 U.S.C. § 3716(e)(2), the Court is unaware of any statute that prohibits administrative offset of the special assessment fee imposed pursuant to § 3014. Nor is Mr. Wanjiku contending that the Government's

8

collection efforts are inconsistent with the payment schedule ordered in the Court's judgment. *See Schotz*, 2024 WL 1478876, at \*2 (opining that "a sentencing court sometimes has ancillary jurisdiction to review an administrative offset as a kind of adjunct to the criminal case—but only if the offset is inconsistent with the court's own restitution judgment.").  To the extent Mr. Wanjiku seeks to challenge the Government's referral to the TOP, a separate civil suit under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, "is the proper vehicle for challenging administrative offset against benefits." *Scholtz*, 2024 WL 1478876, at \*1; *see also Cox v. United States Dep't of Justice*, No. 24-1606, 2024 WL 4635241, at \*3 (7th Cir. Dec. 31, 2024) (holding district court had authority in civil suit to resolve objection to U.S. Attorney's Office's decision to refer debt to the Treasury Offset Program).

Because Mr. Wanjiku has not demonstrated that the Government is unauthorized to offset his social security benefits to satisfy his delinquent debt, the Court denies Mr. Wanjiku's motions seeking a stay of the offset of his social security disability benefits pending resolution of his motion, or a return of those benefits that were already offset.

### CONCLUSION

Accordingly, the Court **DENIES** Mr. Wanjiku's motion to modify judgment (ECF 5), emergency motion to stay garnishment of his social security disability benefits (ECF 6),  motion for emergency hearing requesting a stay of any further garnishment and a return of $156.30 that was already garnished (ECF 16), emergency motion for (I) stay of future garnishments, (II) return of garnished funds, and (III) any other relief the Court deems just and proper (ECF 18), motion to reconsider the Court's February 3, 2025

order and request for immediate return of garnished funds (ECF 20), and motion to

expedite ruling on his emergency motions. (ECF 31). Mr. Wanjiku's pending motion to

waive service costs and request for clerk to serve documents (ECF 21), and his several

motions to seal the various filings, will be addressed by separate order.

SO ORDERED on March 3, 2025.

                                      /s/*Cristal C. Brisco*
                                      CRISTAL C. BRISCO, JUDGE
                                      UNITED STATES DISTRICT COURT